Eastern District of Kentucky
**F I L E D**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

SEP 29 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-481-GWU

LARRY DANIELS,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Daniels

Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

Daniels

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Daniels

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1) whether
> objective medical evidence confirms the severity of the alleged pain
> arising from the condition; or (2) whether the objectively established
> medical condition is of such a severity that it can reasonably be
> expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations. Id.

Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113

(6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816

F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or

4

Daniels

obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Daniels

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Larry Daniels, was found by an Administrative Law Judge to have "severe" impairments consisting of coronary artery disease post myocardial infarction, noncardiac chest pains, hypertension, hypercholesterolemia, and a history of anxiety disorder with depressive symptoms. (Tr. 306). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Daniels retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 311-17).

At the second of two administrative hearings, the ALJ had asked the VE whether a person of the plaintiff's age, educational background, and work history could perform any jobs if he were capable of "medium" level exertion, and also had the following non-exertional impairments. (Tr. 405). He: (1) must avoid hazards; (2) had a "seriously limited but not precluded" ability to use judgment and function independently; and (3) had a "limited but satisfactory" ability to follow work rules,

7

relate to co-workers, deal with the public, deal with work stresses, maintain attention and concentration, understand, remember, and carry out work instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (Tr. 405-6). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 406).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

The evidence shows that Mr. Daniels originally filed applications for DIB and SSI in 2000, alleging disability due to heart attacks, high blood pressure, high cholesterol, weakness, left arm pain, and memory problems, with an onset date of December 3, 1999. (Tr. 82, 101). His applications were eventually denied in an ALJ decision of May 17, 2002 (Tr. 17-29). After the plaintiff appealed to this Court, the case was remanded at the request of the Commissioner an order to obtain a hypothetical question including the ALJ's determination that the plaintiff was restricted from operating motor vehicles. (Tr. 326-30). The Commissioner's Appeals Council issued in order remanding the case to the Administrative Law Judge citing several specific inconsistencies between physical restrictions found by the ALJ and the hypothetical question. (Tr. 324).

8

On remand, the ALJ obtained some additional evidence from treating and consultative sources, held a new hearing, and asked the hypothetical question previously described, which contained the identical physical limitations as the hypothetical question which had prompted the Commissioner's request for a Sentence Six remand. (Tr. 63, 405). However, none of the plaintiff's treating sources provided functional restrictions. Consultative examiners in September, 2001 and January, 2005 both indicated that the plaintiff needed a cardiac stress test before they could fully determine his functional capacity. (Tr. 259-60, 352). No stress testing results were made available to them, but the plaintiff did undergo a treadmill stress test in February, 2002, which, to the extent that it is legible, was considered inconclusive because of the low level of exercise achieved, but there was "no evidence for coronary insufficiency at this level of exercise." (Tr. 294). Both of the consultative examiners had indicated that Mr. Daniels could be released to full physical activities if treadmill testing was negative. (Tr. 259-60, 352). In view of these statements and the fact that the treadmill stress testing did not produce any cardiac abnormalities evident to a lay observer, the Court concludes that substantial evidence supports the ALJ's physical restrictions.

Although Mr. Daniels was employed by the Comprehensive Care Center (CCC) as a driver for 21 years, until being fired in 1999, he apparently never sought

9

mental health treatment. All of the evidence regarding his mental status comes from one-time examinations, of which there are three in the transcript.

Reba Moore, a certified psychologist with autonomous functioning, conducted the first psychological evaluation of Mr. Daniels, on July 5, 2000. (Tr. 174). Despite having been discharged from the Appalachian Regional Hospital six days previously with a final diagnosis of acute pancreatitis secondary to alcohol abuse (Tr. 156), Mr. Daniels denied having anything to drink since 1991. (Tr. 175). He described his activities as including cleaning house, watching television, having visitors four to five times a week, and doing shopping, laundry, and cooking. (Tr. 175-6). Although he forgot to bring reading glasses to the examination, the psychologist felt that he was putting forth his best effort on IQ and achievement testing, which produced a verbal and a performance IQ of 73 and a full-scale IQ of 70, along with fifth grade reading and second-grade arithmetic abilities. (Tr. 176-7). These were felt to be an accurate estimate of his current intellectual functioning. The psychologist diagnosed an anxiety disorder with depressive symptoms, a mathematics disorder, and borderline intellectual functioning, with a current Global Assessment of Functioning (GAF) score of 60. (Tr. 179). A GAF score of 60 is at the high end of "moderate" symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. However, several months later, Reba Moore submitted a mental medical assessment form indicating that Mr. Daniels had either no useful

ability or a "seriously limited but not precluded ability" to make all occupational adjustments, as well as a "seriously limited but not precluded" ability to demonstrate reliability and understand, remember, and carry out detailed, but not complex, job instructions. (Tr. 201-2). She did not reconcile these extreme limitations with the GAF of 60, but did cite certain physical factors outside her area of expertise, such as "fatigue." (Tr. 201-2).

Dr. Gary Maryman, another psychologist, examined Mr. Daniels October, 2001, and was apparently provided a copy of the previous examination. (Tr. 265). Mr. Daniels initially claimed that he had been "laid off" from his job, rather than being fired, and also claimed that he was not driving because of nerves, then later admitted that he lost his license following a DUI. (Tr. 262-3). He initially alleged that he had given up alcohol completely, but later admitted drinking a six-pack per week. (Tr. 264). Mr. Daniels achieved lower IQ scores and reading scores than at the examination performed by Reba Moore, but Dr. Maryman felt that his effort on testing was highly suspect and that he had "no desire or intention to exert any degree of effort." (Tr. 265). His performance on the Rey 15 Item Test suggested "a desire and attempt to misrepresent himself." (Tr. 265-6). Dr. Maryman diagnosed alcohol abuse by history "very likely continuing," along with "borderline intellectual functioning, upper end of range (clinical estimate) vs. low average range," and a GAF of 64. (Tr. 267). Although a GAF score in this range reflects "mild" symptoms per

11

Daniels

the DSM-IV-TR, Dr. Maryman concluded that Mr. Daniels would have a "seriously limited but not precluded" ability to deal with the public and to understand, remember, and carry out detailed but not complex job instructions, and no ability to understand, remember, and carry out complex job instructions. (Tr. 268-9). All other categories were "limited but satisfactory." (Id.).

Finally, Dr. Blaine Pinaire, a licensed psychologist, examined Mr. Daniels on January 5, 2005. (Tr. 337). He also felt that the reliability of the plaintiff's information was questionable in some respects. (Tr. 338). He stated that he did not know the number of weeks there were in a year, although he did know the answer in a previous examination. (Tr. 339). Mr. Daniels stated that he socialized with his girlfriend, with whom he had lived since the previous July, and he planned to get married. (Tr. 338, 340). His vision without correction appeared to be adequate for test taking, and Dr. Pinaire described his efforts, overall, as "adequate, but not good." (Tr. 340). Nevertheless, Dr. Pinaire opined that the test results[1] were an underestimate of Mr. Daniels' true intellectual abilities. (Tr. 340-1). Dr. Pinaire diagnosed "alcohol dependence (by history, in reported remission for two years)," and assigned a GAF of 59. He prepared a functional capacity assessment which

---

[1]A full-scale IQ score of 67, seventh grade reading, fourth-grade spelling, and fourth-grade arithmetic.

Daniels

was essentially adopted by the ALJ and given in the hypothetical question at the second administrative hearing. (Tr. 344-5).

On appeal, the plaintiff argues that the ALJ did not properly weigh the evidence from the three psychological examiners. She notes that Reba Moore was the only psychologist who explicitly found valid test results, and that she should have been given controlling weight. However, given the plaintiff's clear misrepresentations to Moore on some issues, such as drinking, as well as the misrepresentations that he apparently made to subsequent examiners, there is no sound reason to give Moore greater weight than either of the other one-time examiners. This is particularly true given Moore's seemingly inconsistent mental medical assessment form. While the plaintiff asserts that the ALJ should have addressed the limitations given by Moore in greater detail, the Sixth Circuit has noted that a technical violation of procedural requirements is not grounds for remand when it is no more than "harmless error." Wilson v. Commissioner of Social Security, 378 F.3d 541, 547 (6th Cir. 2004). Given the many valid reasons for questioning Reba Moore's conclusions, the ALJ would not have been bound to give her conclusions controlling weight, and any procedural defect is no more than harmless error.

The plaintiff also argues that the ALJ's hypothetical restriction to a "limited but satisfactory" ability to "understand, remember, and carry out work instructions" was a misleading variation of Dr. Pinaire's specific restrictions. The plaintiff concedes that

13

Daniels

Dr. Pinaire's form had indicated a fair, defined as "limited but satisfactory," ability to understand, remember, and carry out even complex job instructions, as well as detailed but not complex job instructions, and simple job instructions (Tr. 345), but his narrative report stated only that the plaintiff was able to "retain and follow simple instructions." (Tr. 343, 345). The plaintiff maintains that the hypothetical question effectively mischaracterized the plaintiff's true abilities by representing that he had a "fair" ability to understand, remember, and carry out even complex work instructions, a conclusion that the plaintiff argues is dubious in view of his IQ scores from Reba Moore and the estimate of borderline intellectual functioning from Dr. Maryman. However, even assuming that this was the case, the plaintiff offers no evidence that the jobs described by the VE in response to the hypothetical question, namely, driving positions, cleaning occupations, and "freight and material handler," would require the ability to understand complex job instructions. Accordingly, this argument is without merit.

Finally, the plaintiff argues that the jobs identified by the VE are inconsistent with a "seriously limited but not precluded" ability to use judgment and function independently, based on their descriptions in the Dictionary of Occupational Titles (DOT). However, no specific evidence from the DOT is cited to support this assertion.

The decision will be affirmed.

14

Daniels

This the __29__ day of September, 2006.

*Sihy lenthank*

G. WIX UNTHANK
SENIOR JUDGE

15